**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHRISTOPHER PATRICK,<br><br>Plaintiff,<br><br>v.<br><br>LOXO ONCOLOGY, INC., JOSHUA H. BILENKER, STEVE ELMS, KEITH T. FLAHERTY, AVI Z. NAIDER, LORI A. KUNKEL, ALAN FUHRMAN, TIM MAYLEBEN, STEVE D. HARR, ELI LILLY AND COMPANY, and BOWFIN ACQUISITION CORPORATION,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Christopher Patrick ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Loxo Oncology, Inc. ("Loxo" or the "Company") and Loxo's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(e) and 78t(a). Specifically, Defendants solicit the tendering of stockholder shares in connection with the proposed acquisition of the Company by Eli Lilly and Company, an Indiana corporation ("Lilly"), through a recommendation statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or

misleading. Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2. On January 7, 2018, the Company announced that it had entered into a definitive agreement (the "Merger Agreement"), by which Lilly would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Loxo common stock for $235.00 in cash per share of Loxo's common stock (the "Merger Consideration"), in a transaction valued at approximately $8 billion (the "Proposed Transaction"). The Tender Offer commenced on January 17, 2019, and is set to expire at one minute after 11:59pm, Eastern time, on February 14, 2019 (the "Expiration Time").

3. In connection with the commencement of the Tender Offer, on January 17, 2018, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, inter alia, it omits to disclose material information concerning the valuation analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of its fairness opinion. Without this material information, the Company's stockholders will be forced to decide whether or not to tender their shares based upon materially incomplete and misleading information. The failure to adequately disclose such material information constitutes a violation of §§ 14(e) and 20(a) of the Exchange Act.

4. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

**JURISDICTION AND VENUE**

5. The claims asserted herein arise under §§ 14(e) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. The Court has personal jurisdiction over each of the Defendants because Loxo is incorporated in this District, and each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because Loxo is incorporated in this District, and Defendants have received substantial compensation by doing business in this District via Loxo.

**PARTIES**

8. Plaintiff is, and has been at all relevant times, the owner of shares of Loxo common stock.

9. Defendant Joshua H. Bilenker ("Bilenker"), is the founder of Loxo. He presently serves as President and Chief Executive Officer, and sits on the board of directors.

10. Defendant Steve Elms ("Elms") is Chairman of the Board and has been a director of the Company since 2013.

11. Defendant Keith T. Flaherty ("Flaherty") has been a director of the Company since 2013.

12. Defendant Avi Z. Naider ("Naider") has been a director of the Company since 2013.

13. Defendant Lori A. Kunkel ("Kunkel") has been a director of the Company since 2014.

14. Defendant Alan Fuhrman ("Fuhrman") has been a director of the Company since 2015.

15. Defendant Tim Mayleben ("Mayleben") has been a director of the Company since 2015.

16. Defendant Steve D. Harr ("Harr") has been a director of the Company since 2016.

17. Defendants Bilenker, Elms, Flaherty, Naider, Kunkel, Fuhrman, Mayleben, and Harr are collectively referred to herein as the "Board" or the "Individual Defendants."

18. Defendant Loxo is a corporation organized and existing under the laws of the State of Delaware. The Company maintains its principal executive offices at 281 Tresser Blvd, 9th Floor, Stamford, CT 06901. Loxo's common stock is traded on the NASDAQ under the ticker symbol "Loxo."[1]

19. Lilly is a global pharmaceutical company headquartered in Indianapolis, Indiana, and is a party to the Merger Agreement. The company is publically traded on the New York Stock Exchange under the ticker symbol "LLY," and it maintains its headquarters at 1211 Avenue of the Americas New York, NY 10036. Eli Lilly is named as a defendant herein solely for the purpose of providing full and complete relief.

20. Bowfin Acquisition Corporation ("Merger Sub"), is a wholly-owned subsidiary of Lilly and is a party to the Merger Agreement. Defendant Merger Sub is named as a defendant herein solely for the purpose of providing full and complete relief.

---

[1] Defendant Loxo and the Individual Defendants are referred to herein as the "Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background**

21. Loxo Oncology is a biopharmaceutical company focused on the development and commercialization of highly selective medicines for patients with genomically defined cancers.

22. The Company's current drug pipeline focuses on cancers that are uniquely dependent on single gene abnormalities, such that a single drug has the potential to treat the cancer with dramatic effect.

**Sale Process**

23. In June 2018, Loxo announced that it had obtained positive interim data from this trial and subsequently had licensing discussions with more than five parties. LOXO-292 is a first-in-class oral RET inhibitor that has been granted Breakthrough Therapy designation by the FDA for three indications, with an initial potential launch in 2020. LOXO-292 targets cancers that occur across multiple tumor types, including certain lung and thyroid cancers as well as a subset of other cancers.

24. While discussions regarding significant potential licensing transactions continued through December 2018, Loxo executives were simultaneously in discussions with representatives of Goldman Sachs & Co. LLC ("Goldman Sachs"), concerning Loxo's business, upcoming milestones and potential future strategic paths. These preliminary discussions led to Goldman Sachs participation at a regularly scheduled meeting of the Loxo board on June 13, 2018, at which time representatives of Goldman Sachs discussed with the Board a preliminary financial analysis of Loxo and the strategic landscape in biotechnology and pharmaceuticals.

25. On December 10, 2018, Dr. Levi Garraway, Lilly's Senior Vice President—Oncology R&D, contacted Defendant Bilenker, Loxo's Chief Executive Officer, in order to

arrange a meeting in Stamford, Connecticut to discuss Loxo, its research and development strategy and objectives as a company.

26. Ten days later, on December 20, 2018, officers of Lilly, including Darren Carroll, its head of business development, Dr. Garraway and Lilly's Chief Financial Officer, its Chief Scientific Officer and its President – Lilly Oncology met with Dr. Bilenker and Mr. Van Naarden at Loxo's Stamford, Connecticut offices at which they indicated that Lilly was interested in acquiring all of the outstanding stock of Loxo for $230.00 in cash per share. During the meeting, the Board instructed management to review and, if needed, update Loxo's long-term financial projections for review by the Board and then proceeded to discuss the potential risks and benefits of contacting third parties regarding making an acquisition proposal to Loxo, and determined that it would not do so at this time, and that the Board would revisit that question once Lilly had conducted initial due diligence and confirmed or increased its proposal.

27. That same day Lilly submitted a letter to Loxo expressing its interest in acquiring all of the issued and outstanding equity of Loxo at a price of $230.00 in cash per Share (the "December 20 Proposal").

28. On December 21, 2018, Loxo provided Lilly with a proposed form of the Non-Disclosure Agreement, and following negotiation of its terms, on December 22, 2018, Loxo and Lilly entered into the Non-Disclosure Agreement. The Non-Disclosure Agreement included a customary standstill restriction onLilly that would expire upon the occurrence of specified events, including Loxo's entry into an agreement providing for an acquisition of Loxo, the commencement of a tender offer for 50% or more of Loxo's equity securities that the Board does not reject within 10 days of receipt, or Loxo's public announcement that it had authorized a process for the solicitation of third party acquisition offers.

29. Shortly thereafter, Loxo provided representatives of Lilly access to an online data room containing certain due diligence materials, including clinical and regulatory information, product commercialization plans and certain material agreements, and from December 23 through December 30, 2018, representatives of Lilly reviewed the information provided in the online data room, and held discussions with Loxo's senior management and representatives of Goldman Sachs and Fenwick & West in connection with their due diligence review of Loxo.

30. On December 23, 2018, Goldman delivered a letter to Loxo and Fenwick & West, regarding certain relationships of Goldman Sachs, including certain fees received from Lilly and/or its affiliates.

31. That same day, the Board held a meeting during which they discussed Loxo management's long-term forecast for Loxo, provided feedback to Loxo's senior management, and directed management to reflect that feedback in a revised forecast, and then to provide the revised forecast to Goldman Sachs for its use in its financial analysis.

32. Discussions and due diligence between the two companies and their respective representatives continued throughout the week until, on December 30, 2018, Lilly submitted a letter to Loxo increasing its offer to $235.00 per Share in cash (the "December 30 Proposal").

33. The December 30 Proposal again indicated that Lilly would fund the transaction entirely from existing cash resources and available external financing and that consummation of a transaction would not be contingent on financing. The letter indicated that Lilly remained committed to a transaction that could be announced on January 7, 2019. Later that same day, representatives of Deutsche Bank spoke with representatives of Goldman Sachs and indicated that $235.00 per Share represented Lilly's "best and final" offer.

34. On December 30, 2018, the Board held a meeting, with members of senior management and representatives of Goldman Sachs and Fenwick & West present, at which the Board discussed the December 30 Proposal. Satisfied with the proposal, the Board directed management to contact Lilly and indicate that Loxo would proceed on the basis of the December 30 Proposal.

35. From December 30, 2018 through January 5, 2019, Loxo provided additional due diligence materials in the online data room, and representatives of Lilly, Deutsche Bank and Weil continued their due diligence review of Loxo, including review of the information provided in the online data room, discussions with Loxo's management and representatives of Goldman Sachs and Fenwick & West and a site visit to one of Loxo's suppliers.

36. On January 2, 2019, Weil provided Fenwick & West with a revised draft of the Merger Agreement, which proposed a number of changes to the draft circulated by Fenwick & West including a termination fee equal to 4.25% of the equity value of the transaction. In addition, Weil provided a proposed form of the support agreement that Lilly requested be executed by Aisling Capital, the holder of approximately 6.6% of the outstanding shares.

37. On January 5, 2019, Loxo engaged Goldman Sachs as Loxo's financial advisor, based on Goldman Sachs' familiarity with Loxo and its industry and its experience with large strategic transactions in its industry.

38. Later that day, the Board held a meeting, with members of senior management and representatives of Goldman Sachs and Fenwick & West present. Representatives of Fenwick & West reviewed with the Board the resolution of the outstanding terms of the Merger Agreement, the form of which had been previously distributed to the members of the Board, including the proposed $265 million termination fee, and discussed the fiduciary duties of the

Board in the negotiation and evaluation of the proposed transaction and the terms of the Merger Agreement. Following this review, Goldman Sachs rendered to the Board Goldman Sachs' oral opinion, which was subsequently confirmed in Goldman Sachs' written opinion dated January 5, 2019 that, as of the date of Goldman Sachs' written opinion, the $235.00 in cash per share to be paid to the holders (other than Lilly and its affiliates) of Shares pursuant to the Merger Agreement was fair from a financial point of view to such holders. The Board then proceeded to unanimously determine that the Offer, Merger and other transactions contemplated by the Merger Agreement were fair to and in the best interest of Loxo and its stockholders, approved the Merger Agreement and declared it advisable for Loxo to enter into the Merger Agreement and recommended that the stockholders of Loxo accept the Offer and tender their shares to Purchaser pursuant to the Offer.

39. Following the Board meeting on January 5, 2019, Loxo and Lilly executed the Merger Agreement, and Lilly and Aisling Capital executed the Tender and Support Agreement. Before the opening of trading on the Nasdaq Stock Market on January 7, 2019, Loxo and Lilly issued a joint press release announcing the execution of the Merger Agreement.

40. The Tender Offer commenced on January 17, 2019 with the filing of the Recommendation Statement.

**The Proposed Transaction**

41. In a press release dated January 7, 2019, the Company announced that it had entered into a Merger Agreement with Lilly pursuant to which Lilly will commence a Tender Offer to acquire all of the outstanding shares of Loxo.

42. The press release states in pertinent part:

> FRAMINGHAM, INDIANAPOLIS, IN and STAMFORD, CT – Eli Lilly and Company (NYSE: LLY) and Loxo Oncology, Inc. (NASDAQ: LOXO) today announced a definitive agreement for Lilly to acquire Loxo Oncology for $235.00

per share in cash, or approximately $8.0 billion. Loxo Oncology is a biopharmaceutical company focused on the development and commercialization of highly selective medicines for patients with genomically defined cancers.

The acquisition would be the largest and latest in a series of transactions Lilly has conducted to broaden its cancer treatment efforts with externally sourced opportunities for first-in-class and best-in-class therapies. Loxo Oncology is developing a pipeline of targeted medicines focused on cancers that are uniquely dependent on single gene abnormalities that can be detected by genomic testing. For patients with cancers that harbor these genomic alterations, a targeted medicine could have the potential to treat the cancer with dramatic effect.

Loxo Oncology has a promising portfolio of approved and investigational medicines, including:

• LOXO-292, a first-in-class oral RET inhibitor that has been granted Breakthrough Therapy designation by the FDA for three indications, with an initial potential launch in 2020. LOXO-292 targets cancers with alterations to the rearranged during transfection (RET) kinase. RET fusions and mutations occur across multiple tumor types, including certain lung and thyroid cancers as well as a subset of other cancers.

• LOXO-305, an oral BTK inhibitor currently in Phase 1/2. LOXO-305 targets cancers with alterations to the Bruton's tyrosine kinase (BTK), and is designed to address acquired resistance to currently available BTK inhibitors. BTK is a validated molecular target found across numerous B-cell leukemias and lymphomas.

• Vitrakvi, a first-in-class oral TRK inhibitor developed and commercialized in collaboration with Bayer that was recently approved by the U.S. Food and Drug Administration (FDA). Vitrakvi is the first treatment that targets a specific genetic abnormality to receive a tumor-agnostic indication at the time of initial FDA approval.

• LOXO-195, a follow-on TRK inhibitor also being studied by Loxo Oncology and Bayer for acquired resistance to TRK inhibition, with a potential launch in 2022.

"Using tailored medicines to target key tumor dependencies offers an increasingly robust approach to cancer treatment," said Daniel Skovronsky, M.D., Ph.D., Lilly's chief scientific officer and president of Lilly Research Laboratories. "Loxo Oncology's portfolio of RET, BTK and TRK inhibitors targeted specifically to patients with mutations or fusions in these genes, in combination with advanced diagnostics that allow us to know exactly which patients may benefit, creates new opportunities to improve the lives of people with advanced cancer."

"We are gratified that Lilly has recognized our contributions to the field of precision medicine and are excited to see our pipeline benefit from the resources and global reach of the Lilly organization," said Josh Bilenker, M.D., chief executive officer of Loxo Oncology. "Tumor genomic profiling is becoming standard-of-care, and it will be critical to continue innovating against new targets, while anticipating mechanisms of resistance to available therapies, so that patients with advanced cancer have the chance to live longer and better lives."

"Lilly Oncology is committed to developing innovative, breakthrough medicines that will make a meaningful difference for people with cancer and help them live longer, healthier lives," said Anne White, president of Lilly Oncology. "The acquisition of Loxo Oncology represents an exciting and

immediate opportunity to expand the breadth of our portfolio into precision medicines and target cancers that are caused by specific gene abnormalities. The ability to target tumor dependencies in these populations is a key part of our Lilly Oncology strategy. We look forward to continuing to advance the pioneering scientific innovation begun by Loxo Oncology."

"We are excited to have reached this agreement with a team that shares our commitment to ensuring that emerging translational science reaches patients in need," said Jacob Van Naarden, chief operating officer of Loxo Oncology. "We are confident that the work we have started, which includes an FDA approved drug, and a pipeline spanning from Phase 2 to discovery, will continue to thrive in Lilly's hands."

Under the terms of the agreement, Lilly will commence a tender offer to acquire all outstanding shares of Loxo Oncology for a purchase price of $235.00 per share in cash, or approximately $8.0 billion. The transaction is not subject to any financing condition and is expected to close by the end of the first quarter of 2019, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Loxo Oncology's common stock. Following the successful closing of the tender offer, Lilly will acquire any shares of Loxo Oncology that are not tendered into the tender offer through a second-step merger at the tender offer price.

The tender offer represents a premium of approximately 68 percent to Loxo Oncology's closing stock price on January 4, 2019, the last trading day before the announcement of the transaction. Loxo Oncology's board recommends that Loxo Oncology's shareholders tender their shares in the tender offer. Additionally, a Loxo Oncology shareholder, beneficially owning approximately 6.6 percent of Loxo Oncology's outstanding common stock, has agreed to tender its shares in the tender offer.

This transaction will be reflected in Lilly's financial results and financial guidance according to Generally Accepted Accounting Principles (GAAP). Lilly

will provide an update to its 2019 financial guidance, including the expected impact from the acquisition of Loxo Oncology, as part of its fourth-quarter and full-year 2018 financial results announcement on February 13, 2019.

**The Recommendation Statement Misleads Loxo Stockholders by Omitting Material Information**

43. As noted previously, on January 17, 2019, the Company filed the Recommendation Statement with the SEC in support of the Tender Offer commenced by Lilly. As alleged below and elsewhere herein, the Recommendation Statement contains material misrepresentations and omissions of fact that must be cured to allow Loxo stockholders to make an informed decision with regarding tendering their shares.

44. Designed to convince shareholders to tender their shares, the Recommendation Statement is rendered misleading by the omission of critical information concerning the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, the projections utilized in Goldman Sachs' fairness opinion, and the potential conflicts of interest involving both Defendant Bilenker and the Company's financial advisor. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

***Goldman Sachs' Financial Analyses and the Company's Projections***

45. The Recommendation Statement describes Goldman Sachs' fairness opinion and the various valuation analyses it performed in support of its opinion, but fails to provide material information concerning key inputs and assumptions underlying these analyses.

46. Specifically, with respect to Goldman Sachs' *Illustrative Sum-of-the-Parts-Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the individual inputs and assumptions underlying the

selection of the discount rate range of 10.0%-11.0%, including the Company's target capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for the Company, as well as certain financial metrics for the United States financial markets generally; (ii) the projected unlevered free cash flows and corresponding line items for each of the product candidates of Loxo, including revenue, cost of goods sold, operating expenses, stock based compensation expenses, and estimated net operating losses ("NOL"); and (iii) the implied per share value range calculated for each product candidate. As referenced in Goldman Sachs' *Illustrative Sum-of-the-Parts-Discounted Cash Flow Analysis*, projections for unlevered free cash flows and corresponding line items for each of the product candidates were prepared by Loxo and shared with Goldman Sachs, however, their omission from the Recommendation Statement leaves Loxo stockholders without a basis to project the future financial performance of a company or the ability to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

47. Similarly, with respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the projected unlevered free cash flows and corresponding line items used by Goldman in the analyses, including revenue, cost of goods sold, operating expenses, stock-based compensation expenses, and estimated NOLs. Furthermore, the *Illustrative Discounted Cash Flow Analysis*, is limited to projections from ***2019*** to ***2028***, despite the fact that the Recommendation Statement contains management projections for other financial metrics from ***2019*** through ***2033***. Accordingly, Loxo must disclose the complete DCF through 2033, or the basis for the decision to prepare tbe DCF using only projections until 2028, and the inputs identified above.

48. Based on the foregoing, Loxo public shareholders lack critical information necessary to evaluate whether the Proposed Transaction truly maximizes shareholder value and serves their interests. Moreover, without the key financial information and related disclosures, Loxo public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by Goldman Sachs, and whether they can reasonably rely on their respective fairness opinions.

***Material Omissions Concerning Conflicts of Interest*:**

49. Finally, the Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by Defendant Bilenker as well as the Company's financial advisor, Goldman Sachs.

50. Specifically, the Recommendation Statement notes that Loxo Oncology entered into the Bilenker Offer Letter with Defendant Bilenker, which provides for certain benefits upon a termination of Dr. Bilenker's employment. However, the Recommendation Statement omits key details regarding the timing and substance of negotiations regarding the Bilenker Offer Letter and any employment-related communications between Dr. Bilenker and Eli Lilly. This information is material to Plaintiff and Loxo's other public stockholders because it relates directly to defendant Bilenker's interest in the outcome of the Proposed Transaction and whether such interest compromised defendant Bilenker's ability to objectively consider the fairness of the Proposed Transaction to Plaintiff and Loxo's other public stockholders. Without such information, the statements in the Recommendation Statement concerning the Bilenker Offer Letter are materially misleading.

51. Furthermore, while the Recommendation Statement notes that Goldman Sachs has previously been engaged in a financial advisory role during the past two years by Lilly, it fails to

disclose whether Goldman Sachs performed past services for the Company or its affiliates, as well as the timing and nature of such services and the amount of compensation Goldman Sachs received for such services.

52. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. Item 1015 of Reg M-A plainly requires the disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates. 17 C.F.R. § 229.1015(b)(4). Where an investment bank is providing a fairness opinion that involves long-standing clients, it may be influenced to find a transaction fair to avoid irritating management and other corporate actors who stand to benefit from the transaction, as this will ensure future lucrative business.

53. Here, the current disclosures, with respect to Loxo, are misleading and must be corrected. A reasonable stockholder would want to know the important economic motivations of Goldman Sachs and the extent of the financial advisor's past relationships with Loxo, and how that motivation could rationally lead Goldman Sachs to favor a deal. Accordingly, without further information regarding the relationships and past dealings of Goldman Sachs with Loxo, the Company's stockholders are being misled into assuming that Goldman Sachs has relationships and past dealings with the buyers of Loxo that are not disclosed in the Recommendation Statement but were considered and evaluated by the Board.

54. Without disclosure of the above referenced information, the Recommendation Statement violates SEC regulations and materially misleads Loxo stockholders. Accordingly, Plaintiff seeks, among other things, the following relief: (i) an injunction of the Proposed

Transaction; (ii) rescission of the Proposed Transaction in the event that it is consummated; and (iii) rescissory or other appropriate damages resulting from Defendants' misconduct.

55. Defendants are, and have at all relevant times been, in full possession of the undisclosed facts, and have negligently, recklessly, knowingly and/or intentionally omitted this information from the Recommendation Statement.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

58. As discussed above, Loxo filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

59. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the

Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60. Furthermore, Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015.

61. The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

62. In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

63. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

64. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

65. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

**Against the Individual Defendants for Violations of § 20(a) of the 1934 Act**

66. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67. The Individual Defendants acted as controlling persons of Loxo within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Loxo and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

68. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

70. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

71. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring that the Recommendation Statement is materially false or misleading;

(B) enjoining, preliminarily and permanently, the Proposed Transaction;

(C) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D) directing that Defendants account to Plaintiff for all damages caused by

them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) granting Plaintiff such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: February 4, 2019

**O'KELLY ERNST & JOYCE, LLC**

*/s/ Ryan M. Ernst*

Ryan M. Ernst (#4788)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Telephone: (302) 778-4000
Facsimile: (302) 295-2873
Email: rernst@oelegal.com

**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
etripodi@zlk.com

*Attorneys for Plaintiff*